**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Patrick Hunter, | No. CV-23-00311-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Southwest Recovery LLC, et al., | |
| Defendants. | |
| Southwest Recovery LLC, | |
| Counter Plaintiff, | |
| v. | |
| Patrick Hunter | |
| Counter Defendant. | |

Pending before the Court are Defendants' motion to enforce a settlement agreement resolving the claims in this action (Doc. 27) and Plaintiff's motion to amend the settlement agreement (Doc. 37). For the following reasons, Defendants' motion is granted and Plaintiff's motion is denied.

## BACKGROUND

On February 21, 2023, Plaintiff, who was then represented by counsel, filed the complaint. (Doc. 1.) The complaint alleges that Plaintiff owns a 2016 Cadillac CTS but fell behind on his loan payments, so the auto lender, Defendant Allied Solutions LLC ("Allied"), contracted with a repossession company, Defendant Southwest Recovery LLC

("Southwest"), to repossess Plaintiff's vehicle. (*Id.* ¶¶ 6-16.) When Southwest arrived to repossess the Cadillac, Plaintiff "started yelling" and then "hopped on the [tow truck] to prevent it from leaving," such that the "tow truck driver called the police to intervene." (*Id.* ¶¶ 17-23.) "Only once the police arrived, and with the police's active assistance, was [Southwest] able to complete the repossession and leave with the Plaintiff's vehicle." (*Id.* ¶ 24.) Plaintiff asserts a claim against Southwest under the Fair Debt Collection Practices Act ("FDCPA") for using "unconscionable means to collect" the debt (*id.* ¶ 27) and asserts a state-law tort claim against both Defendants, asserting they "breached the peace by (1) continuing with the repossession in the face of Plaintiff's repeated and unambiguous objections and instructions for [Southwest] to stop the repossession and leave the Plaintiff's property, (2) recklessly attempting to complete the repossession by trying to tow away the Plaintiff's car from his driveway in front of him, while he was holding onto the truck and driving down the street in such a reckless manner, and (3) by illegally involving law enforcement in the repossession." (*Id.* ¶ 39.)

On April 6, 2023, Defendants filed an answer and Southwest filed a counterclaim. (Doc. 8.) Similar to the complaint, the counterclaim alleges that Plaintiff purchased a Cadillac CTS but fell behind on his loan payments, so Allied hired Southwest to repossess Plaintiff's vehicle. (*Id.* at 5 ¶¶ 6-8.) Here, the parties' stories diverge. According to the counterclaim, when Southwest arrived to repossess the Cadillac, Plaintiff was in his house and did not emerge until the Southwest driver had hoisted the Cadillac onto the tow truck and secured it, completing the repossession. (*Id.* at 5 ¶¶ 11-14.) "As the tow truck was pulling away, Hunter jumped on the back of the tow truck, grabbed a fire extinguisher and used it to smash the rear window of the tow truck, assaulting the Southwest Recovery driver." (*Id.* at 5 ¶ 15.) "After he was assaulted, the Southwest Recovery driver called the Mesa Police to report the assault," which resulted in Plaintiff being "charged with criminal damage and aggravated assault." (*Id.* at 5-6 ¶¶ 16-17.) The counterclaim seeks compensatory damages for trespass to chattels. (*Id.* at 6 ¶¶ 19-20.)

On April 21, 2023, Plaintiff filed an answer to the counterclaim. (Doc. 12.)

On May 9, 2023, the Court issued a scheduling order.  (Doc. 17.)

On June 9, 2023, the parties filed a notice of settlement.  (Doc. 20.)  The Court ordered the Clerk to dismiss the case on August 9, 2023 and enter judgment accordingly unless a party filed a timely request for reinstatement.  (Doc. 21.)

On August 8, 2023, Plaintiff filed a motion to reopen the case, asserting as follows:

> On June 8, 2023, the Plaintiff made an offer to the Defendants to pay a sum certain in exchange for the return of his vehicle.  The offer was contingent upon the Plaintiff having had the opportunity to inspect the vehicle before payment, in order to ensure the vehicle hadn't suffered any mechanical, cosmetic or other damage while in Defendants' custody.  On that same day, the Defendants accepted the Plaintiff's offer. . . .  The Plaintiff is ready, willing and able to meet his obligations under the terms of the accepted settlement, and his settlement funds are presently sitting in his counsel's escrow account.  The only thing that remains to be resolved is the inspection of the vehicle, and then the exchange of the vehicle for the settlement funds upon a satisfactory inspection.  Nevertheless, and despite the passage of two months since the settlement proposal was accepted, the Defendant has either been unwilling or unable to deliver its part of the bargain.  To date, the Plaintiff has not been afforded the opportunity to inspect the vehicle, and is still without his vehicle.  Plaintiff therefore respectfully requests that the case be restored to the Court's active trial calendar, so that the Plaintiff can proceed with filing a formal Motion to Enforce the settlement.

(Doc. 22-1 at 2-3.)

On August 9, 2023, Defendants filed a response to the motion to reopen the case, asserting as follows:

> As Plaintiff pointed out in his Motion, on June 8, 2023, the parties reached a settlement in this matter.  As part of the terms of the settlement, the parties agreed for the release of Plaintiff's vehicle which is currently being stored at a third-party location.  However, it was not until June 16, 2023 that Plaintiff's counsel requested that Plaintiff have an opportunity to inspect and test drive the vehicle prior to it being released to him.  Nonetheless, since the settlement was reached, Defendants' counsel has been working diligently with the third-party storage location to arrange for the inspection and release of the vehicle.  Just recently, the third-party storage location stated that in order to inspect the vehicle and release it, they need a specialized form from another third-party that Defendant Allied Solutions, LLC contracted the storage of the vehicle through, and a cashier's check or cash for the storage fees that are owed for storing the vehicle.  As such, Defendants' counsel has been working with the third-party who contracted the storage and the third-party storage facility to get the proper documents executed, to get the cash or cashier's check for the storage fees, and to arrange a time for the inspection and release of the vehicle.  All of this has been communicated to Plaintiff's counsel by Defendants' counsel.  Given the above, rather than reinstating the case on the Court's trial calendar so that the Plaintiff can file a Motion to Enforce the settlement, the Defendants' request that the Court extend the deadline to place this matter on the dismissal calendar by thirty (30) days to allow time

for Defendants' counsel to get the proper documents executed for release of the vehicle, get the cash or cashier's check for the storage fees, have the vehicle inspected by Plaintiff and released and for the parties to file a Stipulation to Dismiss with this Court.

(Doc. 23 at 1-2.)

On September 12, 2023, the Court denied the motion to reopen the case without prejudice and extended the deadline to file a request for reinstatement to October 11, 2023. (Doc. 26.)

On September 25, 2023, Defendants filed the pending motion to enforce the settlement. (Doc. 27.) The motion asserts the following factual predicate:

After responding to Plaintiff's Complaint, Plaintiff, through his attorney, offered to pay Allied "$13,000 for return of his vehicle, free and clear of any encumbrances. This will resolve all claims brought by all parties to this case." That same date, Defendants "accept[ed] plaintiff Patrick Hunter's settlement offer to pay Allied Solutions, LLC $13,000 in exchange for release of the subject vehicle" and in exchange for Plaintiff agreeing to dismiss with prejudice each and every claim asserted in his Complaint.

Thereafter, on June 16, 2023, Plaintiff's counsel emailed [defense] counsel requesting to inspect the Vehicle before releasing the $13,000 to Allied. After some back and forth, the parties' counsel were able to finalize a Release and Indemnification Agreement. In pertinent part, the Release and Indemnification Agreement states as follows:

"For and in consideration of Plaintiff's payment of THIRTEEN THOUSAND Dollars and no cents ($13,000.00) to Allied and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Allied hereby agrees to return to [sic] 2016 Cadillac CTS to Plaintiff free from any Allied-based encumbrance and/or any other encumbrances related to the Incident, including the towing and/or storage of the 2016 Cadillac CTS during and after the Incident. Before the 2016 Cadillac CTS is returned and/or released to Plaintiff, Allied and SW Recovery agree to allow Plaintiff to inspect the interior and exterior of the 2016 Cadillac CTS for cosmetic and mechanical purposes only. Any of Plaintiff's claims as to personal property contents of the 2016 Cadillac CTS are being resolved as part of this full and complete settlement and are not being inspected as part of Plaintiff's inspection of the 2016 Cadillac CTS."

In sum, the parties agreed that before the vehicle be released and/or returned to Plaintiff, that he would inspect the vehicle. Then, if the vehicle met with his satisfaction the vehicle would be released to him and in return he would direct his attorney to release the $13,000 to Allied.

After finalizing the Release and Indemnification Agreement, Plaintiff's counsel confirmed on August 3, 2023, that Plaintiff's $13,000 in settlement funds was in Plaintiff's counsel's escrow account, ready to be released when the Vehicle was released to Plaintiff. On August 18, 2023, Plaintiff signed the Release and Indemnification.

On September 8, 2023 at 11:00 a.m., Plaintiff attended an inspection of the vehicle with [defense] counsel, R. Mear at ADESA Phoenix where the vehicle was being stored.  At the inspection, Plaintiff inspected the vehicle, signed ADESA's Vehicle Property Redemption Recovery form, and took possession of the Vehicle before 1:00 p.m.  Then, at approximately 2:00 p.m., [defense] counsel received an email from Plaintiff's counsel stating that Plaintiff had directed his counsel to not release the settlement funds from escrow to Allied, stating that there were "issues with the vehicle."  Plaintiff's counsel asked if Allied would be willing to negotiate with Plaintiff on the settlement price or if they would prefer that Plaintiff's counsel release the settlement funds to the Court and seek Court enforcement of the settlement.  Later that same date, [defense] counsel received a list of alleged "damages" to the Vehicle, that Plaintiff wanted reimbursed for before he would release the settlement funds.   In sum, Plaintiff requested replacement of a mismatched tire, a new battery, a new tank of gas, an oil change, reimbursement for mileage added to the Vehicle after it was towed, service of the a earning light on the dashboard, reimbursement for two new key fobs, reimbursement for a garage door opener, floor mats and a spare tire, reimbursement for repairs to scratches on the vehicle and reimbursement to clean the vehicle.

Not only did Plaintiff take possession of the Vehicle, requiring him to pay the agreed upon settlement funds of $13,000.00 to Allied under the terms of the agreement, but his claimed "damages" to the Vehicle are patently false and are just Plaintiff's attempt to pay less that what he owes under the settlement between the parties.

For example, when the vehicle was towed it was noted that there was a hole in the tire, which Defendants' paid to have replaced before the inspection by Plaintiff, despite it having already been damaged when it was towed from Plaintiff's property.  Additionally, between when the vehicle was towed and when Plaintiff took possession of it, 19 miles had been added to the odometer, not the hundreds of miles Plaintiff is claiming, there is no way to confirm that the battery is defective and that it was not defective prior to being towed and there is no way to prove how much gas was in the Vehicle when it was towed.  Further, the Vehicle was repossessed without keys so Allied paid ADESA for a key fob.  Plaintiff has now requested that Allied pay for a second key fob, despite Plaintiff arguably still having the original two key fobs in his possession from before the repossession.  Lastly, there is photographic evidence that the scratches on the Vehicle that Plaintiff is wanted repaired existed prior to the Vehicle being towed.  Lastly, Plaintiff's claims for a garage door opener, license plate, floor mats and a spare tire are a non-issues [sic] because it was specifically contemplated in the Release and Indemnification Agreement that any claims Plaintiff would have to personal property in the Vehicle were being resolved as part of the settlement.

(*Id.* at 2-4, cleaned up.)  Defendants argue that under Arizona's laws regarding contracts, the parties had a binding agreement and Plaintiff "cannot unravel the settlement simply because he has changed his mind."  (*Id.* at 5-7.)[1]

---

[1]     On September 27, 2023, Defendants filed a notice of errata (Doc. 30), which attaches various documents inadvertently omitted from the enforcement motion, including

On September 26, 2023, Plaintiff's attorney filed a motion to withdraw as counsel of record and to deposit disputed funds with the court pursuant to Rule 67 of the Federal Rules of Civil Procedure.  (Doc. 29.)  Plaintiff's counsel sought withdrawal because, *inter alia*, he felt he could not, "in keeping with his obligations to the Court and in compliance with Rule 11, set forth any good faith basis to oppose the Motion to Enforce, as [Plaintiff] wishe[d] him to do," and Plaintiff had repeatedly threatened to sue him if he released the funds and had subjected him to "constant aggression, harassment, threats and profanity."  (*Id.* ¶¶ 9-14.)

On September 28, 2023, the Court granted the withdrawal motion and ordered that the funds be deposited with the Court.  (Doc. 31.)  The Court extended the deadline for Plaintiff—now proceeding *pro se*—to respond to the motion to enforce the settlement to October 12, 2023 and cautioned him that "[f]ailure to timely respond will result in summary disposition of the motion and release of the funds to Defendants."  (*Id.* at 2.)

On October 10, 2023, Plaintiff filed a motion to extend the response deadline.  (Doc. 33.)

On October 11, 2023, the Court granted Plaintiff's motion and extended Plaintiff's response deadline to November 13, 2023.  (Doc. 34.)

Plaintiff did not file a response to Defendants' motion to enforce the settlement.  Rather, on November 13, 2023, Plaintiff filed a two-page "motion to amend settlement."  (Doc. 37.)  Plaintiff's motion acknowledges that the parties "entered into a release agreement" but asks the Court to "modify the original settlement agreement dated Aug. 17, 2023 from the agreed upon sum of $13,000.00 to compensate Plaintiff for damages to vehicle [sic] while in [Defendants'] possession to a total of $5,431.81 and return to Plaintiff the sum of $7,568.19 of the funds previously deposited in escrow."  (*Id.* at 2.)

On November 21, 2023, Defendants filed a reply in support of their motion to enforce the settlement.  (Doc. 38.)

…

_____

a copy of the written settlement agreement (Doc. 30-5).

**DISCUSSION**

As a preliminary matter, Plaintiff failed to respond to the motion to enforce the settlement despite having been warned that failure to respond would result in summary disposition of the motion. As a result, the Court could summarily grant the enforcement motion. LRCiv 7.2(i) ("[I]f the unrepresented party or counsel does not serve and file the required answering memoranda, . . . such non-compliance may be deemed a consent to the . . . granting of the motion and the Court may dispose of the motion summarily."). Nevertheless, Defendants indicated in their reply that "[g]iven the timing of Plaintiff's [motion to amend settlement agreement] . . . and that Plaintiff is a *pro per* party, Defendants are treating Plaintiff's [motion to amend settlement agreement] as his Response to Defendants' Motion to Enforce the Settlement." (Doc. 38 at 1 n.1.) The Court will therefore address the enforcement motion on its merits.

The court has inherent authority to enforce agreements that settle litigation before it. *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994). No hearing is necessary where the material facts concerning the existence or terms of the settlement are not in dispute and there are no allegations of fraud. *Id.* at 959 ("[I]t serves no useful interest to perform elaborate procedural rites before internment of a lost cause."). *See also Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987) ("It is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it. However, . . . [w]here material facts concerning the *existence* or *terms* of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing.") (citations omitted) (emphasis in original); *Doi v. Halekulani Corp.*, 276 F.3d 1131, 1139 (9th Cir. 2002) ("[T]here was no need for an evidentiary hearing on whether an agreement existed, or what its terms were [because] the parties dispelled any such questions . . . .").

Here, there is no dispute regarding the existence of a binding settlement agreement or as to the terms of that agreement. Indeed, Plaintiff's motion to amend the settlement agreement attaches a copy of the agreement. (Doc. 37 at 3-6.)[2] Plaintiff acknowledges

---

[2]    An argument could be made that the settlement agreement was made on June 8, 2023, with no term involving inspection of the vehicle, and that no additional consideration

that the parties "entered into a release agreement" that required Plaintiff to "pay the sum of $13,000 for release of vehicle and any encumbrances." (*Id.* at 1.) The agreement provides that Allied will "return [the] 2016 Cadillac CTS to Plaintiff free from any Allied-based encumbrance and/or any other encumbrances related to [the repossession events], including the towing and/or storage" in exchange for Plaintiff's payment of $13,000. (Doc. 30-5 ¶ 6.) The agreement further provides:

> Before the 2016 Cadillac CTS is returned and/or released to Plaintiff, Allied and SW Recovery agree to allow Plaintiff to inspect the interior and exterior of the 2016 Cadillac CTS for cosmetic and mechanical purposes only. Any of Plaintiffs claims as to personal property contents of the 2016 Cadillac CTS are being resolved as part of this full and complete settlement and are not being inspected as part of Plaintiffs inspection of the 2016 Cadillac CTS.

(*Id.*) Although under the contract, Plaintiff was allowed "to inspect the interior and exterior of the 2016 Cadillac CTS for cosmetic and mechanical purposes only," the contract provided no recission option,[3] nor did it provide that the "financial consideration" of $13,000 could be reduced for any reason. (*Id.* ¶ 8.) Furthermore, the parties "expressly waive[d] and assume[d] the risk of any and all claims for damages that exist[ed] as of [the date of the agreement] but that the Parties [did] not know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and that, if known, would materially affect the Parties' decision to enter into this Release." (*Id.* ¶ 7.) Finally, the parties agreed to stipulate to dismissal of this action with prejudice "following full payment by Plaintiff and possession of the Cadillac by Plaintiff." (*Id.* ¶ 17.)

Plaintiff affirms that he "inspected and took possession of [the] vehicle" on September 5, 2023. (Doc. 37 at 1.) Nevertheless, Plaintiff asks the Court to "modify" the settlement agreement "to compensate Plaintiff for damages to vehicle while in defendants [sic] possession to a total of $5,431.81." (*Id.* at 2.) Plaintiff does not argue that the terms

---

supported the inspection term that was added later, but neither party is advancing this argument. The parties appear to agree that the written agreement, containing an inspection provision, provides the agreed-to terms. (Doc. 37 at 3-6; Doc. 30-5 at 2-5.)

[3] Although the contract does not contain a recission option, Defendants assert that "[i]f [Plaintiff] did not want to accept the car, he retained the right to reject it" and that taking possession of the vehicle meant that Plaintiff "was accepting it in the condition presented." (Doc. 38 at 2-3.)

1   of the contract allow him to reduce the consideration he owes to compensate him for

2   alleged damages to the vehicle, and he cites no legal authority in support of his request for

3   the Court to modify the contract.

4         The contract at issue here includes a term that it "shall be construed and interpreted

5   in accordance with the laws of the State of Arizona." (Doc. 30-5 ¶ 13.)[4]  Under Arizona

6   law, "[a] clear and unambiguous contract must be interpreted according to its terms." *Isaak*

7   *v. Massachusetts Indem. Life Ins. Co.*, 623 P.2d 11, 14 (Ariz. 1981).  Courts lack the power

8   to "modify" parties' contracts:

9         Where parties bind themselves by a lawful contract, in the absence of fraud

10  a court must give effect to the contract as it is written, and the terms and
    provisions of the contract, where clear and unambiguous, are conclusive.
    The intent of the parties, as ascertained by the language used, must control

11  the interpretation of the contract.  ***It is not within the province or power of
    the court to alter, revise, modify, extend, rewrite or remake an agreement.***

12  Its duty is confined to the construction or interpretation of the one which the
    parties have made for themselves.  Where the intent of the parties is

13  expressed in clear and unambiguous language, there is no need or room for
    construction or interpretation and a court may not resort thereto.

14

15  *Shattuck v. Precision-Toyota, Inc.*, 566 P.2d 1332, 1334 (Ariz. 1977) (emphasis added).

16        Plaintiff has not identified any ambiguity in the parties' settlement agreement.  The

17  terms are clear—Plaintiff contracted to pay $13,000 in consideration for the release of his

18  vehicle, free of encumbrances.

19        The parties dispute whether there were, in fact, damages to the vehicle, but the Court

20  need not resolve this dispute.  Even assuming the vehicle was damaged while it was in

21  Defendants' possession, the contractual terms do not contemplate that Plaintiff may reduce

22  the amount of financial consideration he owes to compensate himself for these damages.

23  Indeed, any such damages were expressly waived. (Doc. 30-5 ¶ 7.)  "A valid contract must

24  be given full force and effect even if its enforcement is harsh." *Isaak*, 623 P.2d at 14.  By

25

26  [4]      In the absence of this contractual term, state contract law would nevertheless govern
    Defendants' motion to enforce the settlement agreement and Plaintiff's motion to modify

27  it.  *Wilcox v. Arpaio*, 753 F.3d 872, 876 (9th Cir. 2014).  *See also Jeff D. v. Andrus*, 899
    F.2d 753, 759 (9th Cir. 1989) ("The construction and enforcement of settlement agreements

28  are governed by principles of local law which apply to interpretation of contracts
    generally.").

accepting the vehicle following the contracted-for inspection, Plaintiff bound himself to pay $13,000 regardless of the vehicle's condition.  Thus, Defendants' motion to enforce the settlement agreement is granted and Plaintiff's motion to modify it is denied.

As a final matter, Defendants request that the Court "award Defendants their reasonable attorneys' fees associated with enforcing the settlement agreement."  (Doc. 27 at 7.)  The settlement agreement provides that "in any proceeding" where the settlement agreement is "construed and interpreted," the "prevailing party" is "entitled to an award of costs reasonable attorneys' fees [sic]."  (Doc. 30-5 ¶ 13.)  Having prevailed on their enforcement motion, Defendants are entitled to their reasonable costs and attorneys' fees. Defendants may submit a fees motion by January 5, 2024, which must conform with the portion of the Court's case management order subtitled "Motions for Attorneys' Fees." (Doc. 17 at 6.)

Accordingly,

**IT IS ORDERED** that Defendants' motion to enforce the settlement agreement (Doc. 27) is **granted**.

**IT IS FURTHER ORDERED** that Plaintiff's motion to amend the settlement agreement (Doc. 37) is **denied**.

**IT IS FURTHER ORDERED** that the funds, which have been held by the Court in escrow (Docs. 31, 32), shall be **released** to Defendants.

**IT IS FURTHER ORDERED** that Defendants may submit a fees motion by **January 5, 2024**, which must conform with the portion of the Court's case management order subtitled "Motions for Attorneys' Fees."  (Doc. 17 at 6.)

**IT IS FURTHER ORDERED** that all claims in this action are **dismissed with prejudice** pursuant to the parties' settlement agreement.  The Clerk shall enter judgment and terminate this action.

Dated this 28th day of November, 2023.

Dominic W. Lanza
United States District Judge